798 A.2d 1277

**PANTUSO MOTORS, INC., Alfred D. Pantuso, Sr. and Judith Pantuso, Appellees,**

**v.**

**CORESTATES BANK, N.A., Successor–In–Interest to Third National Bank & Trust Company of Scranton, Appellant.**

**Pantuso Motors, Inc., Alfred D. Pantuso, Sr. and Judith Pantuso, Appellants,**

**v.**

**Corestates Bank, N.A., Successor–In–Interest to Third National Bank & Trust Company of Scranton, Appellees.**

Supreme Court of Pennsylvania.

Argued April 10, 2002.

Decided June 19, 2002.

602

Jerry W. Duffy, for Corestates Bank, N.A.

Clyde W. Waite, Barry L. Gross, Newtown, for Ralph R. Pisani.

Armand E. Olivetti, Scrantown, for Pantuso Motors, Inc., et al.

Before ZAPPALA, C.J., CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## OPINION

Justice SAYLOR.

The question presented is whether a two, four or six year statute of limitations attaches to claims for damages resulting from a judgment creditor's failure to mark a judgment satis-

fied of record after it has been paid in full and an appropriate request for satisfaction has been made.

In 1990, CoreStates Bank ("CoreStates") [1] extended to Pantuso Motors, Inc. ("Pantuso"), a revolving credit line secured by mortgages, a promissory note, and financing statements.[2] In July of 1994, CoreStates confessed judgment against Pantuso in the amount of $471,716.71. Two months later, on September 12, 1994, Pantuso tendered a sum representing payment in full of all obligations owed the bank, and made a written request that CoreStates satisfy all of the obligations of record. CoreStates does not dispute that the obligation was paid in full.

In June of 1995, when CoreStates had still failed to enter the satisfactions, Pantuso made another written request that it do so. Finally, on April 18, 1997, CoreStates entered satisfaction of the judgment, but took no similar action relative to the mortgages and financing statements. Thus, on April 23, 1997, Pantuso demanded that CoreStates mark those security interests as satisfied, a request with which CoreStates eventually, albeit belatedly, complied.

On May 28, 1997, Pantuso instituted suit against CoreStates, based upon the latter's failure to timely record satisfaction of the judgment and security interests, and sought statutory damages pursuant to Sections 9 and 10 of the Act of May 28, 1715, concerning satisfaction of mortgages,[3] Section 8104 of

1. CoreStates is the successor in interest to Third National Bank & Trust Co. of Scranton, the original judgment creditor. For simplicity both entities are referred to as CoreStates.

2. The individual plaintiffs, Alfred D. Pantuso, Sr. and Judith Pantuso, executed the mortgages and promissory note as a personal guarantee of the credit line. Additionally, Pantuso Motors, Inc., executed a promissory note and two financing statements in favor of the bank. All three Appellees/Cross–Appellants are referred to herein collectively as "Pantuso."

3. Act of May 28, 1715, 1 Sm. L. 94, §§ 9 and 10 (as amended, 21 P.S. §§ 681, 682). These provisions state:

Sec. 681 Satisfaction of mortgage on margin of record or by satisfaction piece. Any mortgagee of any real or personal estates in the Commonwealth, having received full satisfaction and payment of all such sum and sums of money as are really due to him by such

the Judicial Code, concerning satisfaction of judgments, *see* 42 Pa.C.S. § 8104,[4] and then-Section 9404(a) of Pennsylvania's Uniform Commercial Code, concerning termination statements.[5] In its answer and new matter, CoreStates raised the statute of limitations as an affirmative defense. Cross-motions for judgment on the pleadings followed.

The trial court concluded that the two-year statute of limitations applied to all of Pantuso's claims, but that such limitations period was renewed each time Pantuso demanded that CoreStates enter satisfaction. Because suit was filed less than two years after Pantuso's final demand for satisfaction,

mortgage, shall, at the request of the mortgagor, enter satisfaction either upon the margin of the record of such mortgage recorded in the said office, or by means of a satisfaction piece, which shall forever thereafter discharge, defeat and release the same; and shall likewise bar all actions brought, or to be brought thereupon.

**Sec. 682  Fine for Neglect.** And, if such mortgagee, by himself or his attorney shall not, within forty-five days after request and tender made for his reasonable charges, return to the said office, and there make such acknowledgment as aforesaid, he, she, or they, neglecting so to do, shall for every such offence, forfeit and pay, unto the party or parties aggrieved, any sum not exceeding the mortgage money, to be recovered in any Court of Record within this Commonwealth, by bill, complaint or information.

21  P.S. §§ 681, 682.

4.  At the time the action was commenced, Section 8104 provided:
    **Duty of judgment creditor to enter satisfaction.**
    (a) **General Rule**—A judgment creditor who has received satisfaction of any judgment in any tribunal of this Commonwealth shall, at the written request of the judgment debtor, or of anyone interested therein, and tender of the fee for entry of satisfaction, enter satisfaction in the office of the clerk of the court where such judgment is outstanding, which satisfaction shall forever discharge the judgment.
    (b) **Liquidated Damages**—A judgment creditor who shall fail or refuse for more than 30 days after written notice in the manner prescribed by general rules to comply with a request pursuant to subsection (a) shall pay to the judgment debtor as liquidated damages 1% of the original amount of the judgment for each day of delinquency beyond such 30 days, but not less than $250 nor more than 50% of the original amount of the judgment. Such liquidated damages shall be recoverable pursuant to general rules, by supplementary proceedings in the matter in which the judgment was entered.
    42  Pa.C.S. § 8104.

5.  Act of Nov. 1, 1979, P.L. 255, No. 86, § 1 (*as amended,* 13 Pa.C.S. § 9404(a) (repealed and recodified as amended at 13 Pa.C.S. § 9513)). This provision is not presently at issue.

the court determined that Pantuso's claims were timely. Accordingly, the court entered judgment in Pantuso's favor as to liability, reserving for trial the determination of damages. An order was subsequently entered, awarding Pantuso $235,858.36 in liquidated damages, an amount representing 50% of the initial judgment of $471,716.71, pursuant to the statutory formula contained in Section 8104(b), 42 Pa.C.S. § 8104(b). Although, as noted, CoreStates was deemed liable pursuant to the other two statutes involved, the trial court did not award any damages under those provisions, opting instead to craft a remedy based solely upon Section 8104(b)'s liquidated damages formula.

CoreStates appealed to the Superior Court, renewing its argument that all of Pantuso's claims were barred by the two-year statute of limitations. The Superior Court deemed the two-year statute controlling, relying upon dicta from its prior decision in *Hanover Plumbing Supply, Inc. v. Russell*, 452 Pa.Super. 32, 35, 680 A.2d 1181, 1182 (1996)(stating that "section 8104 of Title 42 is a punitive statute aimed at encouraging the timely removal of satisfied judgments from the court dockets"). *See Pantuso Motors, Inc. v. CoreStates Bank, N.A.*, 745 A.2d 614, 618 n. 3 (Pa.Super.1999). The panel then concentrated its review upon the arguments pertaining to renewal of the limitations period. In this regard, it analyzed and compared the three statutes involved in Pantuso's initial complaint—Sections 681 and 682 of Title 21, Pennsylvania Statutes, Section 8104 (Title 42, Pa.C.S.), and Section 9404 (Title 13, Pa.C.S.)—taking special note of the mandate in Section 682 that the mortgagee be fined for "every such offense," as well as the absence of similar language in Sections 8104 and 9404. Given such omission, the court determined that, for claims based upon the latter provisions, the statute of limitations could not be renewed with each additional demand for satisfaction. However, the court agreed that, for claims based upon Sections 681–682, the limitations period could be renewed for "each offense," i.e., each unheeded written request for satisfaction of the mortgage. *See Pantuso*, 745 A.2d at 618-19. Because the trial court's damage award was based

exclusively upon the formula in Section 8104(b), the Superior Court vacated that award and remanded for a re-calculation based upon Section 682, 21 P.S. § 682. *See id.* at 619.

We initially allowed appeal to consider, *inter alia,* whether successive Section 8104 demands for entry of satisfaction of an open judgment either revive the initial cause of action or constitute a new cause of action, thus rendering Pantuso's claim under that provision timely. *See Pantuso Motors, Inc. v. Corestates Bank, N.A.,* 566 Pa. 212, 779 A.2d 1142 (2001). After hearing argument, we entered an order allowing appeal on the additional question of whether a two, four or six year statute of limitations applies to Section 8104(b).

Pennsylvania's two-year statute of limitations applies, *inter alia,* to "action[s] upon a statute for a civil penalty or forfeiture." 42 Pa.C.S. § 5524(5). CoreStates points to the *Hanover Plumbing Supply* dicta and argues that, notwithstanding its "liquidated damages" label, *see supra* note 4, the remedy provided by Section 8104(b) is primarily punitive in nature, as it is designed to encourage timely removal of satisfied judgments from court dockets, rather than to compensate the debtor for any harm suffered. CoreStates thus contends that the applicable limitations period is governed by Section 5524(5), 42 Pa.C.S. § 5524(5). Pantuso and *amicus curiae* disagree, and indicate that Section 8104 is remedial, not punitive. They argue that it is governed by either the four-year statute, *see* 42 Pa.C.S. §§ 5525(7) and (8) (pertaining to actions upon bonds, notes, written contracts, or similar instruments), or the residual six-year period set forth at Section 5527 of the Judicial Code, 42 Pa.C.S. § 5527.[6] In either case, they maintain, the action was timely, as it was brought less than four years after the initial demand for satisfaction of the obligations was made.

6. That section states that "[a]ny civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years." 42 Pa.C.S. § 5527.

As an initial matter, Section 5525 can be eliminated from consideration. Although the underlying transaction that ultimately led to entry of the confession of judgment may have included an agreement reduced to writing, Pantuso's claim under Section 8104 is founded upon the statute itself, and not upon a contract, bond, or other written instrument. The question, then, distills to whether Section 8104(b) is a remedial statute intended to compensate debtors for the harmful effects of stale judgments, or instead constitutes a "civil penalty or forfeiture" for purposes of the two-year statute, 42 Pa.C.S. § 5524(5), as indicated by the Superior Court.

· In deciding this question, our role, as with all statutory interpretation, is to give effect to the intent of the Legislature. *See* 1 Pa.C.S. § 1921. In ascertaining such intent, section headings and titles may be used as an aid, *see* 1 Pa.C.S. § 1924; *Wiley v. Umbel*, 355 Pa. 206, 208 n. 1, 49 A.2d 371, 373 n. 1 (1946), and words and phrases must be understood according to their common usage. *See* 1 Pa.C.S. § 1903(a). Terms that have acquired specialized meaning, however, are to be interpreted according to such meaning. *See id.* Whenever possible, statutes must be construed so as to give effect to every word. *See* 1 Pa.C.S. § 1921(a); *Masland v. Bachman*, 473 Pa. 280, 291, 374 A.2d 517, 523 (1977). With these principles in mind, substantial weight attaches to the prominence of the term "liquidated damages" in the enactment at issue. The General Assembly not only chose to place this phrase within the heading of Section 8104(b), but selected it to appear twice within the statutory text as the sole designation of the statutory remedy there provided. *See supra* note 4.

Liquidated damages is a term of art originally derived from contract law; it denotes " 'the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable ... if the breach occurs.' " *In re Plywood Co. of Pa.*, 425 F.2d 151, 154 (3d Cir.1970) (quoting

*Westmount Country Club v. Kameny,* 82 N.J.Super. 200, 197 A.2d 379, 382 (1964)). A penalty, by contrast, is fixed, "not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach." *Westmount Country Club,* 197 A.2d at 382 (citing McCormick, DAMAGES § 146, pp. 599–600). Thus, contracting parties may provide for pre-determined liquidated damages in the event one party fails to perform, particularly in circumstances where actual damages would be difficult to estimate in advance or to prove after a breach occurs. *See Commonwealth v. Musser Forests, Inc.,* 394 Pa. 205, 213, 146 A.2d 714, 718 (1958); *Kelso v. Reid,* 145 Pa. 606, 611, 23 A. 323 (1892); RESTATEMENT (SECOND) OF CONTRACTS, § 356(1)("Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss[;][a] term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."). *See generally Geisinger Clinic v. Di Cuccio,* 414 Pa.Super. 85, 99, 606 A.2d 509, 516 (1992)(listing criteria to differentiate liquidated damages from penalties).

CoreStates maintains that, although Section 8104(b) is denominated "liquidated damages," the remedy it prescribes operates as a penalty because liability under the statute may bear little relationship to the harm suffered by the judgment debtor. In this regard, CoreStates, as noted, cites *Hanover Plumbing Supply,* and additionally calls our attention to *Holt's Cigar Co. v. 222 Liberty Assocs.,* 404 Pa.Super. 578, 591 A.2d 743 (1991), in which the Superior Court's disposition generally reflects the Restatement rule as stated above. *See id.* at 586–88, 591 A.2d at 747–48 (citing RESTATEMENT (FIRST) OF CONTRACTS § 339). Although this Court has declined to endorse the Restatement's precise formulation, *see Commonwealth, Dep't of Transp. v. Mitchell,* 517 Pa. 203, 214, 535 A.2d 581, 586 (1987), we have indicated that liquidated damages in actions *in contractu* may be awarded "only in cases where the amount is reasonable and there is a difficulty in assessing the harm that would be caused by a breach." *Id.* (citing *Musser*

*Forests*, 394 Pa. at 212, 146 A.2d at 717). This position reflects the public policy of this Commonwealth favoring reasonableness in contractual stipulations generally. *See Insley v. State Mut. Life Assur. Co.*, 334 Pa. 368, 375, 5 A.2d 544, 547 (1939); *see also Kunkle v. Wherry*, 189 Pa. 198, 201, 42 A. 112 (1899) (observing that one basis for the unenforceability of contractual penalties is that a party should not be allowed to profit from the other's default).

Whether or not CoreStates' argument would have merit in a private contractual setting, it must not be overlooked that the damage award here at issue was calculated by reference to legislative enactment, not contractual stipulation. Manifestly, absent constitutional infirmity the courts of this Commonwealth may not refuse to enforce on grounds of public policy that which the Legislature has prescribed. *See Commonwealth ex rel. Alessandroni v. Borough of Confluence*, 427 Pa. 540, 544 n. 4, 234 A.2d 852, 854 n. 4 (1967); *Olin Mathieson Chem. Corp. v. White Cross Stores, Inc., No. 6*, 414 Pa. 95, 98, 199 A.2d 266, 267 (1964)(stating that the Legislature has the exclusive responsibility to enunciate public policy). It would likewise be anomalous for this Court to declare, on grounds ultimately rooted in public policy, that a remedy which the General Assembly has specifically designated as liquidated damages is in fact a statutory penalty or forfeiture. This is particularly true where, as here, the harm to be remedied reasonably lends itself to a liquidated damages solution: the injury resulting from paid judgments remaining unsatisfied of record—including possible damage to the debtor's reputation, credit rating, and financial affairs generally—is likely to be difficult to quantify, and, like the Section 8104 formula, may increase with the amount of the stale judgment and the duration it remains of record. Thus, we are skeptical of the *Hanover Plumbing Supply* court's declaration that Section 8104(b) is penal in nature, which, in any event, lacked supporting analysis or authority.

CoreStates also submits that, in *Werner v. Auto. Fin. Co.*, 347 Pa. 217, 31 A.2d 898 (1943), this Court indicated that the remedy provided by the mortgage satisfaction statute, 21 P.S.

§ 682, is punitive as to the mortgagee. CoreStates argues by analogy that, given the similarity between that enactment and Section 8104(b), the latter remedy is punitive as to the judgment creditor, and hence, operates as a statutory fine or forfeiture subject to the two-year statute. While it is true that *Werner* characterized the remedy under the mortgage statute as having the dual purpose of compensating the aggrieved party and punishing the offending party, *see id.* at 219, 31 A.2d at 899, we do not view that decision as indicating that Section 8104(b)'s remedy constitutes a penalty as to the judgment creditor, as there are important differences between the two statutes. For one, the penalty prescribed by Section 682 is discretionary with the court and designed as a "[f]ine for neglect." *See* 21 P.S. § 682. The award under Section 8104(b), by contrast, is specified in precise terms and denominated "liquidated damages." *See* 42 Pa.C.S. § 8104(b). Further, the *Werner* court referred to the penalty aspect of the mortgage statute's remedy chiefly to emphasize that trial courts could consider the defendant's culpability when fixing the damage award and should reserve the harshest penalties for mortgagees who act unreasonably or wantonly. *See, e.g., Crawford v. Simon*, 159 Pa. 585, 589, 28 A. 491, 492 (1894). While this Court has made similar observations regarding Section 8104's predecessor statute, 12 P.S. § 971 (repealed),[7] *see Henry v. Sims*, 1 Whart. 187 (Pa.1836), such prior legislation—similar to Section 682—had afforded the trial court wide latitude in setting the penalty for failure to remove satisfied judgments.[8] Accordingly, under that predecessor statute the blameworthiness of the defendant's conduct was relevant in determining the amount of the award, and the remedy was correctly viewed, at least in part, as a penalty as to him. *See id.* at 200. Notably, it is that prior legislation that the *Werner* Court stated was similar to Section 682. In a subsequent amendment, the remedy was altered to remove any discretion, and with it, any possibility of factoring the culpability of the

**7.** Act of April 13, 1791, 3 Sm. L. 28, § 14 (repealed).

**8.** The prescribed penalty was "any sum of money, not exceeding one-half of the debt or damages so adjudged and recovered." 12 P.S. § 971 (repealed); *see Henry v. Sims*, 1 Whart. at 197.

defendant's conduct into the award. Thus, to the extent an analogy existed at the time of the *Werner* decision between the prescribed schemes for compensating mortgagors and judgment debtors, it has been diminished via legislative change. Consequently, we are not inclined to contravene the General Assembly's present designation of the award at issue as liquidated damages, but rather, defer to its judgment in terms of the approach that it has chosen to employ.[9]

Accordingly, as the two- and four-year limitations periods do not attach to Pantuso's cause of action under Section 8104(b), the six-year residual statute applies. Consequently, Pantuso's Section 8104 claim, as predicated upon its initial request for entry of satisfaction in 1994, was timely, and we need not reach the question of whether any subsequent demand revived the limitations period.

The Superior Court's order is reversed, and the matter is remanded for reinstatement of the order of the trial court awarding Pantuso damages pursuant to Section 8104(b).

Justice EAKIN did not participate in the consideration or decision in this matter.

---

**9.** CoreStates argues in the alternative that, even if the two-year statute for civil penalties and forfeitures is not implicated, the limitations period for tortious injury to persons or property bars the present suit, as its failure to enter judgment satisfaction amounted to negligent conduct. *See* 42 Pa.C.S. § 5524(7)(imposing a two-year limitation period for "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct ...."). CoreStates fails to cite any authority for the conclusion that violating the requirements of Section 8104 constitutes a tort controlled by Section 5524(7). Moreover, the award of liquidated damages—rather than damages premised upon the plaintiff's proof of specific injuries together with proximate causation—undermines CoreStates' theory in this regard. *See Commonwealth v. Root*, 403 Pa. 571, 574, 170 A.2d 310, 311 (1961)(observing that proof of proximate cause is necessary for recovery based upon negligence). Thus, absent legislative guidance, we decline to classify a violation of Section 8104 as tortious conduct for purposes of Section 5524(7).