J-A07001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANDREW J. RIOS, AS TRUSTEE OF THE ANDREW J. RIOS 2012 TRUST AND DERIVATIVELY ON BEHALF OF EAGLE DESIGN, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| JOSEPH RIOS, TJR ENTERPRISES, INC., A PENNSYLVANIA CORPORATION, AND CAMTAR CORPORATION, A PENNSYLVANIA CORPORATION, | |
| Appellees | No. 470 WDA 2015 |

Appeal from the Order March 6, 2015
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD 14-17216

BEFORE:  BOWES, MUNDY AND JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 08, 2016**

Andrew J. Rios, as Trustee of the Andrew J. Rios 2012 Trust and derivatively on behalf of Eagle Design, Inc. ("Eagle") (collectively "Plaintiffs"), appeals from the March 9, 2015 order enforcing a settlement agreement reached in a contentious dispute with his brother, Joseph Rios, and corporations over which Joseph asserted control (collectively "Defendants").  We affirm.

The facts, as gleaned from the record, consist of the following. Andrew was the President, CEO and Director of Eagle, a corporation formed

in 1998 and engaged in construction and building maintenance and cleaning services, with annual revenues of approximately $800,000. He owned 100% of all voting stock and 3,000 shares of nonvoting stock in the corporation. His brother Joseph was the CEO of TJR Enterprises, Inc. ("TJR"), which was engaged in similar business activities. Eagle and TJR would occasionally share employees and equipment and the offices were located in a building owned by Joseph. Starting in 2014, Eagle's business records were maintained on TJR's computer system.

According to Andrew, Joseph sought legal counsel from an estate planning attorney in an effort to minimize tax liability due to the profitability of Eagle. Andrew, as Grantor, subsequently established a Family trust and gifted 6,900 shares of Eagle non-voting stock to that trust. Theresa Dunkle, the brothers' sister, was its trustee. Andrew and Joseph's parents established the Andrew J. Rios 2012 trust, with Andrew as trustee and owner of a beneficial interest. Andrew sold thirty percent of Eagle's non-voting stock and a 100 percent interest in its voting stock to that trust.

The relationship between Andrew, Joseph and Theresa began to deteriorate in 2014. On September 23, 2014, Andrew filed the instant action in the Court of Common Pleas of Allegheny County seeking a preliminary injunction and access to Eagle's business accounting records and assets. He pled therein that Joseph installed a comptroller at Eagle who was loyal to Joseph, thereby gaining control of all the financial records,

equipment and personnel of Eagle. Andrew maintained that he had been locked out of the Eagle offices since July 2014, and that Joseph refused him access to Eagle business records. He averred that Joseph was exerting control over Eagle employees and diverting Eagle's business opportunities to TJR. He sought an injunction directing Joseph and the corporate defendants to turn over all accounting files, corporate records, and corporate assets of Eagle.

On October 7, 2014, the case was assigned to the commerce and litigation center with the consent of the parties. The court immediately scheduled a hearing on Andrew's motion for a preliminary injunction for December 2, 2014, and ordered the parties to preserve all electronic data stored on corporate systems relating to Eagle and the two trusts.

Joseph filed an answer denying that Eagle's assets were used by TJR to compete, and maintained further that TJR hired a couple of Eagle employees only because Eagle had no ongoing construction work for them to perform. He pled that he and Andrew made a mutual decision to wind down operations at Eagle. Answer at ¶28. He denied that Andrew was locked out or denied access to any of the financial information necessary to operate Eagle. *Id*. at ¶33. Joseph filed a counterclaim requesting an accounting of funds Andrew had withdrawn from Eagle and dissolution of that entity, or in the alternative, appointment of a receiver to dissolve Eagle. On November

12, 2014, Joseph sought emergency injunctive relief to stop Andrew from dissipating the Eagle assets and engaging in self-dealing.

The parties agreed to mediate their dispute and subsequently reached a tentative settlement that was reduced to writing in the form of a Material Settlement Term Sheet on December 8, 2014. They resolved additional outstanding issues on January 14, 2015, and the Term Sheet was signed by the parties on that date. The Term Sheet provided *inter alia* that Andrew would sell his interest in Eagle. The closing for the sale was scheduled for January 23, 2015, but Andrew did not attend, ostensibly because his counsel was unavailable. Thereafter, Joseph filed a motion to enforce the settlement agreement. The trial court held a hearing on February 18, 2015, granted the motion, and the closing was rescheduled for February 26, 2015. On that date, Andrew objected that the Final Settlement and Mutual Release did not comport with the agreed-upon terms of the Material Settlement Term Sheet regarding liability for the Family Trust's 2015 taxes and the deduction of amounts at closing for Andrew's expenditures of Eagle's money after January 7, 2015. Hence, Andrew refused to sign the Final Settlement and Mutual Release.

On March 2, 2015, Andrew filed an application for declaratory relief and Joseph countered with a second motion to enforce the settlement agreement. Andrew asked the court to rule that, according to the Term Sheet, he was not responsible for 2015 taxes attributable to his status as a

grantor of the Family Trust and that Joseph was not entitled to deduct $21,270.94 from cash due Andrew at closing for business-related expenditures Andrew made from Eagle post-January 7, 2015. Andrew argued that paragraph 27 of the Term Sheet was "nothing more than a penalty masquerading as liquidated damages clause" and unenforceable as a matter of public policy.

By order entered March 9, 2015, the court ruled on Andrew's application and Joseph's motion. The court found Andrew responsible for payment of the 2015 taxes attributable to his status as grantor of the Family Trust until closing per the Term Sheet. Furthermore, the Term sheet authorized the defendants to deduct $21,270.94 from the amount due Andrew at closing, which was the amount of the payments made by Andrew from Eagle funds after January 7, 2015. Finally, the court ordered the parties to sign the final Settlement Agreement and Mutual Release within ten days.

On March 12, 2015, Andrew sought emergency reconsideration of the order, and one day later, he filed a notice of appeal and an application for stay pending appeal.[1] Andrew was ordered to file a Pa.R.A.P. 1925(b) concise statement of issues complained of on appeal, and he complied. The

_____

[1] The certified record contains no indication that the trial court ruled on either the motion for reconsideration or the application for stay.

trial court issued its Pa.R.A.P. 1925(a) opinion.  Andrew presents two issues

for our review:

> [I.] Whether it was error for a trial court to grant a motion to enforce a settlement agreement without conducting an evidentiary hearing.
>
> [II.] Whether the Court's [sic] erred when it failed to consider paragraph 27 of the term sheet to be a penalty clause unenforceable under state law because it imposed a penalty without a determination of the damages, if any, to be suffered by Defendants.

Appellants' brief at 5-6.  In reviewing a trial court order enforcing a

settlement agreement,

> our scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court. However, we are only bound by the trial court's findings of fact which are supported by competent evidence. The prevailing party is entitled to have the evidence viewed in the light most favorable to its position. Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous.

*Salsman v. Brown*, 51 A.3d 892, 893-894 (Pa.Super. 2012).

The following principles inform our review.  Settlement agreements are

contracts governed by the general rules of contract interpretation.

*Thompson v. T.J. Whipple Constr. Co.*, 985 A.2d 221 (Pa.Super. 2009);

*Friia v. Friia*, 780 A.2d 664 (Pa.Super. 2001).  As with contracts generally,

the intent of the parties is paramount, and "the court will adopt an

interpretation which under the circumstances ascribes the most reasonable,

probable, and natural conduct of the parties, bearing in mind the objects

- 6 -

manifestly to be accomplished." *Friia*, *supra* at 668 (quoting *Charles D. Stein Revocable Trust v. Gen. Felt Indus., Inc.*, 749 A.2d 978, 980 (Pa.Super. 2000)). Where the language of the agreement is unambiguous, the plain meaning of the words is determinative of the parties' intent. *Id*. "A contract is deemed ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. Therefore, a contract will be deemed unambiguous if reasonable persons could not differ as to the contract's interpretation." *Purdy v. Purdy*, 715 A.2d 473, 475 (Pa.Super. 1998) (citation and quotation marks omitted).

Andrew alleges first that the trial court erred in granting the motion to enforce the settlement without an evidentiary hearing. Defendants point out that this alleged error is waived as it was not identified in Plaintiffs' Rule 1925(b) concise statement. *See* Pa.R.A.P. 1925(b)(4)(vii). Plaintiffs counter that the trial court's failure to hold an evidentiary hearing was "implicitly if not openly a part of the concise statement of errors complained of on appeal." Appellants' brief at 8. We disagree. Even though we deem every error identified in the statement as including "every subsidiary issue contained therein," the concise statement does not contain any reference to the trial court's failure to conduct an evidentiary hearing. Pa.R.A.P. 1925(b)(4)(v). This issue is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("issues

not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").[2]

Andrew's second issue is a challenge to the trial court's construction of ¶27 of the Term Sheet. He complains that the payments he made using the corporate credit card after January 7, 2015, were for business-related purposes and that the sum of $21,270.94 should not have been deducted from the sale price of the stock pursuant to that provision.

Paragraph 27 of the Term Sheet, which was signed by the parties on January 15, 2015, provided:

> Effective as of January 7, 2015, Andrew J. Rios agrees not to make any further expenditures of [Eagle] funds from [Eagle] and/or make any charges on [Eagle] credit cards. **If any payments are made by Andrew J. Rios they shall be**

---

[2] Andrew attributed the trial court's allegedly erroneous conclusion that he was obligated to pay the 2015 taxes on income generated by the Family Trust until date of closing to its failure to hold an evidentiary hearing. *See* Appellants' brief at 22 ("By failing to have a trial, the court had no understanding of the laws rules and regulations that would require plaintiff to be obligated to pay the tax as noted herein"). We find no merit in this contention.

The trial court found the Term Sheet unambiguous regarding Andrew's obligation to pay 2015 taxes, and we concur. The 2014 tax obligation was expressly assigned to Joseph in ¶1 of the Term Sheet. Paragraph 12 obligated the trustee of the Family Trust to take whatever steps were necessary to cease being a grantor trust for federal tax purposes, effective at closing. That paragraph further provided, "Upon the Closing and thereafter, Andrew J. Rios shall have no further obligations relating to the Family Trust, including . . . the payment of taxes." Term Sheet ¶12. Hence, Andrew remained liable for 2015 taxes until the closing date. We agree with the trial court that, "Any other interpretation would render these paragraphs meaningless." Trial Court Opinion, 5/22/15, at 39.

**deducted from the sale price of the stock set forth in paragraph 9.** Furthermore, Andrew J. Rios agrees that his last paycheck that he will receive from [Eagle] will be paid on January 14, 2015 for the week ending January 9, 2015. Andrew J. Rios will receive no further wages or benefits after January 9, 2015 other than health insurance through February 28, 2015.

Material Settlement Term Sheet, 1/14/15, at ¶27 (emphasis added).

The trial court found, as a matter of law, that Paragraph 27 of the Term Sheet unambiguously embodied Andrew's agreement not to expend Eagle funds after January 7, 2015. If he did so, the amount of any payments would be deducted from the sale price of the stock payable to him at closing. It was undisputed that Andrew made two expenditures totaling $21,270.94 on January 14 and February 11, 2015. Thus, the court concluded, Joseph was entitled to deduct those amounts from the payment due Andrew at closing.

Andrew characterizes Paragraph 27 as a stipulated liquidated damages clause intended as punishment for breach of contract as in ***Pantuso Motors, Inc. v. CoreStates Bank, N.A.***, 798 A.2d 1277 (Pa. 2002) and ***Holt's Cigar Co. v. 222 Liberty Assoc.***, 591 A.2d 743 (Pa.Super. 1991). He claims that it is an unenforceable penalty clause "because it was not arrived at by a good faith effort to estimate in advance what the actual damage that Defendants would suffer in the event of a breach[.]" Appellants' brief at 27.

We find no merit in this contention. *Pantuso* is factually inapposite as it involved statutory authority for the trial court's imposition of liquidated damages against a bank that failed to mark as satisfied various obligations its customer had repaid. The Pennsylvania Supreme Court upheld an award that was calculated pursuant to the statute, even though it amounted to one-half of the original debt.

*Holt's Cigar*, *supra*, involved an action for damages and injunctive relief due to breach of a commercial lease. The trial court imposed a substantial award based on an agreed upon liquidated damages provision that provided for a payment of $ 500.00 per day where tenant was unable to conduct business due to defendant's construction activities. The issue on appeal was whether the liquidated damages provision was compensation or a penalty. This Court held that

> The question [of whether stipulation is a penalty or a valid liquidated damages provision] . . . is to be determined by the intention of the parties, drawn from the words of the whole contract, examined in the light of its subject-matter and its surroundings; and in this examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach in damages, and such other matters as are legally or necessarily inherent in the transaction.

*Id*. at 747-48. We found, based on the trial testimony, that the fixed sum bore no reasonable relation to anticipated or probable damages but was a

penalty to discourage delay. Since the award did not represent compensation for damages sustained, we reversed and vacated it.

The document in question is a negotiated settlement agreement. Andrew agreed not to "make any further expenditures of [Eagle] funds from [Eagle] and/or make any charges on [Eagle] credit cards" after January 7, 2015. He agreed further that the amount of **any** payments made after that date would be deducted from the amount due him for his shares at closing. The parties did not carve out any exception for expenditures benefitting the corporation. We agree with the trial court that Paragraph 27 is unambiguous. Furthermore, we find that the provision was intended to ensure that Eagle was fully compensated dollar-for-dollar for any corporate funds expended by Andrew after the agreed-upon date, and was not a penalty.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2016

- 11 -