J-A12031-15

2015 PA Super 105

| BETTY A. MOSER, | IN THE SUPERIOR COURT OF |
| | PENNSYLVANIA |
| Appellee | |
| | |
| v. | |
| | |
| RONALD R. RENNINGER, EXECUTRIX OF THE ESTATE OF THE LATE RONALD R. RENNINGER, SR. | |
| | |
| Appellant | No. 1065 MDA 2014 |

Appeal from the Order entered April 25, 2014,
in the Court of Common Pleas of Berks County,
Domestic Relations, at No(s): 10-20253#2

BEFORE:  BOWES, DONOHUE, and ALLEN, JJ.

OPINION BY ALLEN, J.:                                    **FILED MAY 01, 2015**

The Estate of Ronald R. Renninger, Sr., ("the Estate"), appeals from the order denying its exceptions to a Master's report which ordered the Estate to pay spousal support to Betty A. Moser ("Wife").[1]  We affirm.

The trial summarized the pertinent facts and procedural history as follows:

> A complaint in support was filed by [Wife] on November 4, 2010 against Ronald Renninger ("Husband") in which she assert[ed] that the parties were married on August 27, 1982. [The issue of whether the parties were legally married was

_____

[1] As explained ***infra***, because Ronald R. Renninger, Sr. is deceased, the Estate has been substituted as a party.  Accordingly, we have amended the caption.

raised by Husband and it was ultimately determined by the Honorable Peter Schmehl that the parties were married, under common law, on June 8, 1985.]

The parties were ordered to appear before a conference officer on February 2, 2011, however this conference was continued to March 15, 2011 and then again to May 3, 2011. Because the issue of the parties' marriage was raised by Husband, a hearing to determine the parties' marital status was scheduled before the [trial court], and as a result the support conference was deferred until June 28, 2011. Following an evidentiary hearing, [the Honorable Peter W.] Schmehl determined on May 13, 2011, that the parties were, in fact, common law husband and wife and had been such since June of 1985. This determination was appealed, which resulted in the support conference again being continued. The appeal was quashed [because it was from an interlocutory order, ***Moser v. Renninger***, 40 A.3d 156 (Pa. Super. 2012),] but in the meantime, on June 14, 2012, an interim order of support was entered, requiring Husband to pay Wife support in the amount of $394.10 per month, plus arrears in an unspecified amount. That same day, June 14, 2012, another order was entered which, *inter alia*, designated the matter a complex case and scheduled an evidentiary hearing for September 10, 2012. Further, Husband was ordered to produce a copy of his unemployment compensation information.

Husband passed away on August 2, 2012 following an extended period of serious illness, before the support conference was scheduled to take place.

In light of Husband's death, the [interim] support order was terminated on August 3, 2012 and a hearing was scheduled before Judge Schmehl on September 16, 2012. Although Husband's estate was not formally substituted as a party, the executrix of Husband's estate, Pamela Renninger ("Executrix") participated in all proceedings thereafter. Following several continuances, an evidentiary hearing eventually took place on September 23, 2013. Executrix then filed a Petition to Terminate/Dismiss Spousal Support/ Alimony [*pendente*] *lite* ("APL") in which she contend[ed] that the divorce abated due to the death of Husband and that neither the Divorce Code nor the rules governing the

establishment of support orders allow for the establishment of a support order following a party's death.

The parties each submitted briefs on the issue. In her brief Wife concedes that where grounds have not been established, the court is unable to address any claims which are dependent on the entry of a [divorce] decree (i.e., equitable distribution). She contends, however, that APL and Spousal Support are not dependent on the entry of a [divorce] decree and notes that APL is not decided under the Divorce Code but rather is governed by the Support Guidelines. Wife further concurs that the obligation of support terminated upon the death of Husband, however, she argues that she is nonetheless entitled to support from the date of the filing of the petition up to the date of Husband's death. She points out that generating a retro-active [sic] support order is a routine practice and that Wife is a creditor under the estate, as any other.

In her brief, Executrix argues that grounds have not been established and the Divorce Code does not allow for a claim of APL to be established posthumously.

On June 17, 2013 Judge Schmehl considered the above and, following oral argument on the issues, ruled that Wife's claim for spousal support could proceed, as an arrearage-only case, but that the claim for APL abated on the date of Husband's death. He further ordered that, in the event that an order for Spousal Support is not entered, the arrears due under the interim APL order would be collectible by Wife. The [Estate] was also formally substituted as a party to this support action. The parties disagreed as to the meaning of the language of this June 17, 2013 order. Briefs were again filed. Wife's position [was] that the June 17, 2013 order should be interpreted to mean that she is entitled to APL up to the time of Husband's death, and, moreover, entitled to seek Spousal Support. Executrix counter[ed] that Wife failed to timely seek judicial clarification and/or reconsideration of the June 17, 2013 order and is therefore bound by its terms. The parties, however, disagree as to the meaning of the language of the order.

On November 27, 2013, following a hearing before Custody/Support Master Karen Longenecker, Esquire, Findings of Fact, Conclusions of Law and a Recommendation

- 3 -

were submitted to the court, along with certain stipulations by the parties. After the stipulations, the only issues before the Master were (1) whether Husband had any additional income not previously considered and (2) whether there was an entitlement defense to Spousal Support. In fashioning her Recommendation, Master Longenecker heard the testimony of Wife, the parties' daughter Jackie Renninger, and the testimony of Executrix Pamela Renninger, Husband's daughter.

Ultimately, the Master determined that Estate, through Executrix, did not sufficiently establish a defense to spousal support by proving the underlying conduct by clear and convincing evidence, failing to demonstrate either indignities or desertion as alleged by Executrix. [Master Longenecker] concluded that Wife was entitled to Spousal Support from the date of the filing of the petition through the date of Husband's death, however at different charging rates based on the relative incomes of Husband and Wife throughout that nearly three-year period.

Exceptions to the Recommendation of the Master were field on December 17, 2013, following which Executrix, on behalf of Estate, filed a Petition for an Injunction to Stay Enforcement of the Order for Spousal Support. On January 24, 2014, an order was signed placing $14,114.34 in escrow and scheduling the matter for argument before the Honorable Madelyn Fudeman.

[The Honorable James M. Bucci] heard argument in Judge Fudeman's absence, and ultimately entered an order denying the Exceptions of the Executrix of [the Estate].

Trial Court Opinion, 8/19/14, at 1-4 (footnote omitted). This timely appeal followed. Both the Estate and trial court have complied with Pa.R.A.P. 1925.

The Estate raises the following issues:

A. WHETHER THE FAILURE TO DISMISS THE SUPPORT CASE IS AN ERROR OF LAW AND AN ABUSE OF DISCRETION.

B. THE RECORD DOES NOT SUPPORT A FINDING THAT [] WIFE IS ENTITLED TO RECEIVE SPOUSAL SUPPORT[.]

C. ERROR OF LAW AND ABUSE OF DISCRETION WERE
COMMITTED IN MISCALCULATING INCOME[.]

Estate's Brief at 4.

Our standard of review is well settled:

We review spousal support cases for abuse of discretion. In order to overturn the decision of the trial court, we must find that it committed not merely an error of judgment, but has overridden or misapplied the law, or has exercised judgment which is manifestly unreasonable or the product of partiality, prejudice, bias or ill will as demonstrated by the evidence of record.

*S.M.C. v. W.P.C.*, 44 A.3d 1181, 1185 (Pa. Super. 2012) (citation omitted).

The Estate highlights the fact that, despite Wife's filing of a support action in 2010, Husband died before any support hearing was held where he could testify, and before any support order was entered. In its first issue, the Estate claims that the trial court should have dismissed Wife's complaint for support because the trial court "cannot supply a remedy to [the Estate] under the facts and circumstances of this case." Estate's Brief at 14.[2]

_____

[2] In the proceedings, the Estate never specifically asserted the applicability of the Dead Man's Statute, 42 Pa.C.S.A. section 5930, as rendering Wife incompetent to testify as to her entitlement to spousal support. The purpose of this statute "is to prevent the injustice which might flow from permitting the surviving party to a transaction with a decedent, to give testimony thereon favorable to himself and adverse to the decedent, which the latter's representative would be in no position to refute." *G.J.D. v. Johnson*, 669 A.2d 378, 384 (Pa. Super. 1995) (citations omitted). Here, the Estate presented testimony tending to refute Wife's testimony regarding the incident that led to her removal from the marital residence. *See* N.T., 9/23/13, at 52-64. Moreover, as discussed *infra*, although the trial court recognized the Estate's limitations in this regard, it concluded "the difficulty
*(Footnote Continued Next Page)*

According to the Estate, because "the authority for the award of APL arises under the Divorce Code" and "the divorce has abated due to" Husband's death," an order for APL "cannot be established after the death of a party to the divorce." *Id.* at 15.

The Estate mischaracterizes the award at issue. As noted above, the trial court entered an interim order of support, or *alimony pendente lite*, during Husband's lifetime. The parties do not dispute that such payments terminate due to Husband's death. However, Husband died prior to the entry of a final order in Wife's separately filed support action. The issue that arises therefore is whether Husband's death should also abate the support action.

Both parties refer to the lack of appellate case law regarding this factual circumstance. *See* Estate's Brief at 14; Wife's Brief at 7. In *Chaniewicz v. Chaniewicz*, 257 A.2d 605, 606 (Pa. Super. 1969), this Court agreed with the trial court that unpaid "arrearages in support of a wife survive the death of the husband." Here, the fact that these "arrearages" have yet to be determined is of no significance—Wife filed her action for support during Husband's lifetime, and such calculation can be made. We find support for this conclusion from several county decisions.

*(Footnote Continued)* ────────────

in presenting rebuttal evidence cannot, alone, foreclose the rights of a long-term spouse to support." Trial Court Opinion, 8/19/14, at 9.

The reasoning in **Malone v. Malone**, 82 Pa.D.&C. 479, 482-87 (1952), is instructive:

> The civil obligation of a husband to support his wife is on the theory of an implied contract with her by reason of the marriage relationship. A civil action brought by a wife against her husband for maintenance is fundamentally an action based on a contract implied from the circumstances. . . . Why should not an action brought by a wife for maintenance against her husband, who dies during the pendency of the action, survive the death of the husband so that wife can recover proper maintenance from time of the husband's desertion or other failure to maintain her to the time of the husband's death? What good reason is there that the husband's estate should not be liable for such maintenance? Why should his heirs, legatees or devisees be enriched by precluding the wife from recovering from his estate that which accrued to her during his lifetime?
>
> ***
>
> The question before us is: If an action brought by a wife against her husband . . . for maintenance is pending at her husband's death, does the action survive his death so the wife can recover from his estate maintenance to which she was entitled prior to his death?
>
> ***
>
> [Case law] fully support[s] the proposition that a wife has a right to recover in a civil action against her husband for maintenance . . . during the pendency of the action. If the husband dies during the pendency of the action, although no order for maintenance could be then prospective, the wife clearly has the right to recover against the husband's estate for maintenance which she shows should have been paid by him to her prior to his death. . . . It survives the death of the husband.

*See also McMullen v. McMullen*, 23 Pa.D.&C. 2d 105, 113 (1961) (holding that while operation and effect of an order or decree of support of a wife

terminates at her death, it can be enforced against her husband for any arrearages accumulated during her lifetime).

We therefore agree with the following rationale of the trial court:

> There is no dispute that, upon Husband's death, the divorce abated. However, at issue is Wife's right to Spousal Support from the time of the filing of her petition in support through the date of his death. Husband and Wife were determined to be married from June of 1985 through Husband's death in 2012, a period of seventeen years. The complaint in support was filed while Husband was still alive, and an interim support order was entered during his lifetime. Therefore, we did not allow a support order to be established after Husband's death but rather permitted Wife to continue her action for support. This is consistent with the well-established, longstanding rule that a surviving spouse can collect unpaid support from the estate of the deceased spouse. [**Malone**, **supra**]. We submit that it was not error to [refuse to] dismiss the case for support based solely on Husband's death during the pendency of the case, where the case was initiated during his lifetime.

Trial Court Opinion, 8/19/14, at 6. Thus, the Estate's first issue fails.

In its second issue, the Estate claims that the trial court abused its discretion in concluding that Wife was entitled to a support award because it "failed to consider the testimony of the Executrix (daughter of the decedent) regarding the separation of the parties, and the circumstantial evidence produced at [the] hearing that [Husband] was attacked by [Wife]." Estate's Brief at 11. The Estate further asserts that the trial court "failed to consider that [Husband] obtained a Protection from Abuse Order because of [Wife's] violent actions perpetuated against him while he was ill and dying." *Id.* at

11-12. Finally, the Estate highlights Executrix's testimony that she personally observed several altercations between the couple, and Husband's inability to swallow liquids due to his illness. ***See id.*** at 12.

The trial court, in rejecting the Estate's claim, explained:

> We did not, as alleged by Executrix, fail to consider these facts. Rather, we considered them and, like the Master, did not find such facts to be a sufficient basis upon which to deny Wife's claim for Spousal Support in the context of a long-term marriage.
>
> Executrix complains that we failed to consider the fact that Husband asked the police to remove Wife from the marital residence. While on the one hand this fact may be evidence of abuse, on the other hand this fact negates Executrix's claims that Wife voluntarily [deserted] Husband. Moreover, Wife testified that the only reason she was asked to leave was that Husband was too intoxicated to drive, so it was prudent under the circumstances for her to leave. Apparently neither the police who responded to the incident nor any objective third-party witness that may have been able to shed some light onto the facts and circumstances were called to testify. Executrix bears the burden of demonstrating Wife's indignities by clear and convincing evidence. Like the Master, we feel that Executrix did not meet her burden, and failed to establish a defense to Spousal Support based on the evidence presented at the hearing.
>
> With respect to the defense of abuse and the issue of Husband seeking a PFA against Wife, we note that the record indicates that both Husband and Wife had sought PFAs against each other, both of which were ultimately withdrawn. Therefore, what remains is little more than mutual allegations of abuse by the parties. Absent a fact-finding hearing we will not consider the allegations contained in the PFA petitions, as none have been established by an evidentiary hearing (which hearing would take place during Husband's lifetime and during which he would have had an opportunity to testify). The fact that both parties sought protective orders is indicative

of a troubled relationship at best and is insufficient to establish a defense to Spousal Support.

Spouses owe an absolute duty of support. ***See*** 23 Pa.C.S.A. §4321. There is an exception to this duty where the party seeking support has engaged in conduct that would constitute grounds for a fault-based divorce. ***See*** [23 Pa.C.S.A. § 3301]. However, this conduct must be established by clear and convincing evidence. ***See Crawford v. Crawford***, 633 A.2d 155 (Pa. Super. 1993). As the Master points out in her Findings, individual instances of poor behavior do not necessarily rise to the level of "indignities" for purposes of determining eligibility for Spousal Support. [***See S.M.C. v. W.P.C.***, 44 A.2d 1181, 1187-88 (Pa. Super. 2012) (explaining that, although there is not specific definition for "indignities," "indignities must consist of a course of conduct or continued treatment which renders the condition of the innocent person intolerable").] We agree with the Master that Executrix failed to demonstrate indignities.

Executrix next argues that this Court failed "to consider the impossibility of presenting any rebuttal to (Wife's) case as the Decedent (Husband) obviously cannot rebut or deny any allegations". While we are sympathetic to Executrix's plight in this regard, the difficulty in presenting rebuttal evidence cannot, alone, foreclose the rights of a long-term spouse to support. If Husband were alive but incapacitated, Wife would be permitted to proceed despite the obvious difficulties relating to evidence in the nature of Husband's testimony. Further, Husband/Executrix was not barred from presenting circumstantial evidence relating to the parties' relationship. Such third-party evidence is highly persuasive where the parties' own testimony can be viewed as self-serving. On balance, the fact that Husband/Executrix may have more difficulty establishing a defense to support is not, alone, an adequate basis upon which to totally deny Spousal Support in the context of a long-term marriage.

Trial Court Opinion, 8/19/14, at 7-9.

Our review of the record, including the testimony presented at the evidentiary hearing and the Master's report, supports the trial court's conclusions. "[T]he master's report and recommendation, although only advisory, are to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Taper v. Taper*, 939 A.2d 969 (Pa. Super. 2007). As an appellate court, we cannot disturb these credibility determinations. Thus, Appellant's second issue fails.

In its final third and final issue, the Estate asserts that the Master and the trial court committed two evidentiary errors. The Estate first argues that the Master erred in permitting the introduction of improperly-authenticated evidence into the record, and used this evidence to calculate Husband's 2011 income available for support. It then asserts that the Master and the trial court did not consider appropriately Husband's 2011 tax returns when calculating his income. We address these claims separately.

In its Pa.R.A.P. 1925(a) opinion, the trial court explained the facts surrounding the admission of the contested evidence as follows:

> The [Master's] hearing was limited to two issues: whether there was an entitlement defense to spousal support and whether Husband had received additional income in the form of unemployment compensation during calendar year 2011. The Master addressed this issue in her Recommendation noting that Husband did not report any unemployment compensation on his 2011 income tax return, however, Wife submitted information that Husband had received $440.00 per month in unemployment compensation. This information was in the form of what

the parties and the Master referred to as an "OINC" screen, a printout of which was marked as [Wife's] Exhibit 8.

Trial Court Opinion, 8/19/14, at 9-10.[3]

The trial court then cited the following exchange from the Master's hearing:

[Wife's attorney]: In terms of exhibits, I would just request. . . we'll mark this as P-8, that the Court take judicial notice of the PACSES records that were reflected on the OINC screen. Again, there was testimony regarding the. . . fact that [Husband] had received some unemployment compensation in [2011]. There have been two prior discovery orders. I've also issued a notice to appear which very specifically directed [Executrix] to bring information today which has never been provided. So under those circumstances we would ask the Court to take judicial notice of the information that was obtained through the OINC screen and to mark that as Exhibit P-8.

[Estate's attorney]: I disagree that it's a subject. . . a proper subject for judicial notice. I think you have to have a custodian of the records testify to that to have it admitted as a business record. . .

Hearing Master: So [] you are objecting to the. . .

[Estate's attorney]: OINC screen. Yeah.

Hearing Master: Okay.

[Estate's attorney]: Yes.

Hearing Master: I'm going to overrule the objection. The document that is contained in the PACSES records is maintained by the Pennsylvania Department of Labor and

_____

[3] "OINC" refers to a screen within a computer program used by the domestic relations office to indicate "other income" of a party to a support action.

Industry Unemployment Compensation Board. It appears on the PACSES record and so I'll accept it into the record as Exhibit P-8.

*Id*. at 10, citing N.T., 9/23/13, at 67-68.

The trial court concluded, "the argument that the contents of the 'OINC' screen were improperly admitted by the Custody/Support Master may have merit, to the extent that the 'OINC' screen does not appear to qualify for any exception to the rule excluding hearsay evidence." Trial Court Opinion, 8/19/14, at 11. Upon review of the record, in accordance with the rules of evidence and relevant statutory provisions, we agree with the trial court that the OINC screen print-out was not properly certified or otherwise authenticated. *Compare Commonwealth v. Visconto* 448 A.2d 41, 44-45 (Pa. Super. 1982) (holding that a computer printout of unemployment compensation payments made to the defendant were properly admitted in a criminal prosecution for welfare fraud when the records were certified by the Department of Unemployment Compensation Operations Chief, and a supervisor in the local unemployment compensation office testified that he received the documents from that person, who had legal custody of them).

Nevertheless, as noted by the trial court, "other, independent" evidence existed to establish that, contrary to Husband's 2011 tax return, he did receive unemployment compensation during 2011. Trial Court Opinion, 8/19/14, at 12. Indeed, the Estate conceded as much at the hearing, but did not have the documentation to contradict the OINC screen print-out, which indicated that Husband received such income for the entire year.

Given these circumstances, we cannot conclude that the Master erred in accepting the OINC screen print-out as "evidence" of the undisputed fact that Husband received unemployment compensation during that year. Thus, unlike the trial court, we discern no reason to remand this case for the Estate to present documentation it had repeatedly failed to produce earlier in the proceedings, and which should have been presented at the Master's hearing.

Finally, the trial court found no merit to the Estate's claim that the Master improperly considered Husband's 2011 tax return in calculating Husband's income available for support. The trial court explained:

> Husband's tax returns were admitted into the record. Tax returns are a form of self-reporting. If [the Estate] is complaining that the Master erred in not basing her calculations solely on Husband's tax returns, this issue was addressed at oral argument [on the Estate's exceptions]. We noted then, and reiterate here, that the fact that Husband did not include any 2011 unemployment compensation on his 2011 tax returns can either be considered circumstantial evidence that he did not receive unemployment compensation in 2011, or it can be considered evidence that Husband omitted income from his federal income tax return. Executrix [], Husband's daughter and designated power of attorney, testified that her father received "some sort of unemployment compensation" in 2011, and that she assisted Husband in completing paperwork to receive these benefits. Without more information as to this allegation of error, however, we are unable to meaningfully address the issue.

Trial Court Opinion, 8/19/14, at 12-13.

Our review of Executrix's testimony at the Master's hearing supports the trial court's treatment of this issue. Additionally, we note the well-settled proposition that "taxable income is not the same as net income used to determine support obligations." ***Darby v. Darby***, 686 A.2d 1346, 1349 (Pa. Super. 1996). The Estate's third issue is therefore without merit.

In sum, we affirm the trial court's order awarding Wife spousal support from the day she filed her petition until the date of Husband's death.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2015