J-A06022-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

LINDA LEVENSON : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
STANTON LEVENSON : No. 1139 WDA 2017

Appeal from the Order July 10, 2017
In the Court of Common Pleas of Allegheny County Family Court at No(s):
FD 99-003878-006

LINDA LEVENSON : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
STANTON LEVENSON :
:
Appellant : No. 1189 WDA 2017

Appeal from the Order July 10, 2017
In the Court of Common Pleas of Allegheny County Family Court at No(s):
FD99-3878-006

BEFORE: BENDER, P.J.E., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.: FILED JUNE 25, 2018

This is an appeal by Linda Levenson ("Wife") from the denial, in part, of her contempt petition and a cross-appeal by Stanton Levenson ("Husband"). We affirm in part and reverse in part.

This matter had its genesis in 1999 when Wife filed a complaint for support. The parties had married in 1966 and separated in 1998. They

_____
* Retired Senior Judge assigned to the Superior Court.

have two adult children, a son with special needs and a daughter. Husband filed a divorce complaint in April of 2000. The matter was bifurcated, a divorce decree was granted on December 26, 2001, and equitable distribution ensued. In 2004, the parties cross-appealed from an order of alimony, equitable distribution, and counsel fees. This Court affirmed the trial court on all issues in a memorandum decision. Levenson v. Levenson, 863 A.2d 1238, 599 and 711 WDA 2003 (Pa. Super. 2004) (unpublished memorandum).

The trial court summarized the facts and procedural history of the current matter, beginning with Wife's filing of the instant contempt petition.

> Wife sought to hold Husband in contempt of a Consent Order of [c]ourt signed by the parties on February 26, 2010. Wife claimed that Husband willfully failed to make alimony payments in accordance with paragraph one of the Consent Order, and failed to pay premiums required to maintain a life insurance policy with Wife as the beneficiary. Following a [contempt] hearing on November 30, 2016, the Hearing Officer issued a Recommendation . . . finding Husband in contempt for failing to make timely alimony payments. She recommended that he purge by paying in full and on time going forward. The Hearing Officer found Husband not to be in contempt of the provision requiring him to make payments on a life insurance policy. It was recommended that Wife be awarded attorneys' fees of $3000.

> Both parties filed exceptions to the Recommendation. By Order dated July 10, 2017, the [c]ourt ordered Husband to make two lump sum payments on arrearages in addition to paying alimony in full and on time. All other exceptions and cross exceptions were dismissed. Wife timely appealed, and Husband filed a cross appeal.

Trial Court Opinion, 10/26/17, at 2–3. Both parties and the trial court complied with Pa.R.A.P. 1925. We consolidated the appeals sua sponte on August 23, 2017.

Wife raises the following issues in her Statement of Questions Involved in her brief:

1. Did the Trial Court err by failing to properly determine the amount of arrearages owed?

2. Did the Trial Court err in failing to require Husband to make adequate payments on the arrearages owed?

3. Did the Trial Court err by failing to impose adequate purge conditions and sanctions upon Husband for his contemptuous conduct in failing to make requisite alimony payments?

4. Did the Trial Court err by failing to enforce Paragraph 7 of the February 26, 2010 Consent Order providing that alimony would be $6,000.00 per month and/or in finding that the provisions of Paragraph 7 were unenforceable and/or overly punitive under the circumstances?

5. Did the Trial Court err by failing to enforce the provisions of the February 26, 2010 Consent Order regarding Husband's obligation to pay all premiums necessary to maintain Wife as beneficiary on life insurance in the amount of $200,000.00 until such time as he fully retires?

6. Did the Trial Court err in failing to require Husband to compensate the Wife for his failure to maintain the requisite life insurance, including but not limited to by contributing to and/or establishing a fund for Wife to be distributed to her at the time of Husband's death?

7. Did the Trial Court err by failing to require Defendant to fulfill his obligations regarding life insurance under the February 26, 2010 Consent Order as a result of Wife's failure to send him notification that the premiums were due under the circumstances and especially since the

February 26, 2010 Consent Order did not provide that Wife was required to send any notification to Husband and his obligation to maintain the life insurance was not conditioned in any way on Wife providing him with notice that the premiums were due?

8. Did the Trial Court err in failing to find Husband in contempt with regard to Paragraph 4 of the February 26, 2010 Consent Order and/or in failing to enforce Paragraph 4 of the Consent Order which required Husband to continue to pay all premiums necessary to maintain Wife as beneficiary on life insurance in an amount of $200,000?

9. Did the Trial Court err in failing to award Wife all and/or adequate counsel fees she incurred with regard to these proceedings in accordance with the provisions of the February 26, 2010 Consent Order and/or as a sanction for Husband's contempt and/or bad faith conduct?

10. Did the Trial Court err by failing to adequately enforce the provisions of the February 26, 2010 Consent Order?

Wife's Brief at 2–4.

In his cross-appeal, Husband raises the following two issues in his brief:

I. Whether the trial court erred in finding Husband in contempt regarding the payment of monthly alimony, and in requiring Husband to make two lump sum payments on arrearages in the amount of $20,000 each.

II. Whether the trial court erred in awarding Wife counsel fees.

Husband's Brief at 38.

The trial court described the Consent Order dated February 26, 2010, and filed on March 1, 2010, as "prepared by the parties in full settlement of

dueling Petitions for Modification of Alimony."  Trial Court Opinion, 10/26/17,

at 3.  That order provided:

> AND NOW, to wit, this 26th day of February, 2010, upon consent of both parties, it is hereby ORDERED, ADJUDGED and DECREED:
>
> 1. Effective January 1, 2010, [Husband] shall pay alimony to [Wife] in the amount of $5,500.00 per month until such time as he fully retires and is no longer working at all.  Payments are due on or before the first day of every month beginning with March, 2010.  The first payment is due on March 1, 2010.  Pursuant to the PACSES[1] system, a payment shall not be overdue as long as it is paid by the end of the month.
>
> 2. The alimony payments provided for herein shall not be subject to modification for any reason including but not limited to any changes in circumstances of any kind for a period of two years from the date of this Order.
>
> 3. [Husband] shall pay $20,000.00 to [Wife's] counsel for counsel fees in monthly installments of $500.00 per month beginning on January 1, 2011.  All counsel fee payments shall be made on or before the 1st day of every month, beginning with January 1, 2011.  If [Husband] becomes more than three months behind in his counsel fee payments, the total amount of

_____

[1] Pennsylvania Automated Child Support Enforcement System ("PACSES") is a computer program used by the domestic relations office, "which exists pursuant to Title IV–D of the Social Security Act, 42 U.S.C. §§ 651–69b, is certified by the Child Support Enforcement Office of the U.S. Department of Health and Human Services, and is implemented by state law."  Tauro v. Dep't of Pub. Welfare, 384 C.D. 2009, 2009 WL 9102314, at *2 (Pa. Cmwlth., filed October 13, 2009) (unpublished memorandum); Moser v. Renninger, 116 A.3d 1107, 1114 and 1114 n.3 (Pa. Super. 2015).  Because PACSES is electronically linked to a variety of governmental and private agencies and institutions, it is able "to immediately locate and identify an obligor's income, income sources and assets."  Pa.R.C.P. 1910.19, Explanatory Comment—2000.  "[I]dentification through these automated methods provides a basis for modifying both the current support obligation and the rate of repayment on either past due or overdue support."  Id.

counsel fees shall be increased to $30,000.00 to be paid at the rate of $1,000.00 per month thereafter.

4. [Husband] shall continue to pay all premiums necessary to maintain [Wife] as beneficiary on life insurance in an amount of $200,000.00 as required by prior Court Order of 2003 until such time as he fully retires. [Husband] shall transfer ownership of this policy to [Wife] within 15 days of the date of this Order. In entering into this Order, [Husband] authorizes [Wife] to contact the insurance agent and/or company in order to determine if the requisite insurance is in effect. Once the policy is transferred to [Wife], copies of all statements and premium notices shall be mailed to [Wife] and bills for premiums mailed to [Husband].

5. The above provisions are in full settlement of both parties' Petitions for Modification of Alimony.

6. [Husband] shall at least continue to be responsible for all of [the parties' son's] medical expenses. [Wife] will not proceed on her Petition for Enforcement of an Agreement regarding [their son's] expenses at this time but reserves the right to reschedule a hearing on that Petition. The hearing scheduled on that Petition for Enforcement on March 1 and 2, 2010 is hereby continued generally. [Wife] may reschedule the hearing on that Petition by Praecipe.

7. The alimony amount is conditioned upon [Husband's] timely compliance with all the provisions of this Order. If [Husband] fails to make payments provided for herein on time, including but not limited to any premium payment to maintain the life insurance as provided in ¶ 4, and/or fails to bring all alimony payments due current by the end of each year, the amount of alimony will be $6,000.00 per month instead of $5,500.00. In such event, the $6,000.00 per month alimony payment shall be retroactive to January 1, 2010 regardless when [Husband's] failure to make any such payments on time shall occur. Payments on arrearages shall be $500.00 per month. Arrearages and/or over payment are set at 0.00 as of December 31, 2009.

8. The provisions of ¶ 7 above shall not be interpreted to provide [Husband] with an excuse for failing to comply with the terms of this Order and are not in lieu of [Wife's] other remedies

for enforcement of the provisions of this Order. It is understood and agreed that in the event of [Husband's] failure to comply with any of the provisions of this Order, [Wife] shall have all enforcement remedies available as provided in Pennsylvania law, including but not limited to proceedings for contempt, counsel fees, incarceration and/or any other sanctions the [c]ourt deems appropriate.

9. If [Husband] fails to comply with any of the provisions of this Order, he will be responsible for all counsel fees and costs [Wife] incurs in seeking to obtain his compliance.

10. The parties will execute a modified PACSES order[] containing the above provisions.

11. The hearing scheduled for March 10, 2010 is hereby cancelled.

Consent Order, 3/1/10, at 1–3.

Appellate review of a contempt order is limited to determining whether the trial court abused its discretion. Bold v. Bold, 939 A.2d 892, 894–895 (Pa. Super. 2007). "If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused." N.A.M. v. M.P.W., 168 A.3d 256, 261 (Pa. Super. 2017) (quoting Gates v. Gates, 967 A.2d 1024, 1028 (Pa. Super. 2009)). However, "[t]his Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." P.H.D. v. R.R.D., 56 A.3d 702, 706 (Pa. Super. 2012) (citation omitted). "To sustain a finding of civil contempt, the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor

had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent." MacDougall v. MacDougall, 49 A.3d 890, 892 (Pa. Super. 2012) (citing Lachat v. Hinchcliffe, 769 A.2d 481, 489 (Pa. Super. 2001)).

Initially, we note that Wife failed to comply with the briefing requirements of our Rules of Appellate Procedure. As provided in Pa.R.A.P. 2101, appellate briefs "shall conform in all material respects with the requirements of these rules," and failure to do so may result in the brief being quashed or dismissed. Id. Issues are waived when they are not addressed in conformance with the rules. Moses Taylor Hospital v. White, 799 A.2d 802, 804 (Pa. Super. 2002) (citing Korn v. Epstein and DeSimone Reporting Group, 727 A.2d 1130, 1135 (Pa. Super. 1999)); Hrinkevich v. Hrinkevich, 676 A.2d 237, 241 (Pa. Super. 1996).

Most egregiously, Wife does not provide argument individually for each issue she has set forth in her Statement of Questions Involved, pursuant to Pa.R.A.P. 2116. Pa.R.A.P. 2119 provides, in pertinent part, as follows:

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). Wife's organization of her arguments, in that the claims do not correspond with the issues presented, hampers our review. Nevertheless, we address the issues that are raised.

We have discerned that Wife, rather than presenting argument on the ten questions listed in the Statement of Questions Involved, instead asserts three basic claims that may be viewed as groupings of the issues. All three groups have at their base the premise that the trial court failed to enforce the Consent Order. First, she asserts that the alimony arrearages were improperly calculated, and the trial court failed to enforce Paragraph 7 of the Consent Order. Second, Wife contends the trial court erred when it failed to enforce the provisions requiring Husband to maintain the life insurance policy as provided in Paragraph 4 of the Consent Order. Third, Wife avers that the trial court erred in refusing to order Husband's payment of all of Wife's counsel fees as provided in Paragraph 3 of the Consent Order.

Wife first asserts that the trial court "ignored th[e] evidence and declined to find Husband in contempt." Wife's Brief at 11. She further argues that the trial court erred in failing to enforce the express terms of Paragraph 7 of the Consent Order wherein Husband's monthly alimony payment was to have increased from $5,500 per month to $6,000 per month, retroactive to 2010, in the event of his noncompliance with the order. Wife's Brief at 8, 10; Consent Order at ¶ 7. Wife maintains that Husband was living a successful attorney's "high life" while failing to pay

J-A06022-18

alimony. Wife's Brief at 10. Wife suggests that the trial court, in construing the Consent Order as a contract, erred in determining that Paragraph 7 was a penalty clause and therefore, was unenforceable. Rather, Wife contends the trial court "should have seen the required increase set forth in Paragraph 7 of the Consent Order as an enforceable provision to compel Husband to pay off his mounting arrears." Id. at 18. Wife's theory is as follows:

> In this case, Husband has been in arrears, in varying amounts, since 2013. [The] parties do not dispute that his current arrears in terms of his base alimony obligations amount to $23,000. Per the terms of the Consent Order, Husband's yearly alimony obligation ($5,500 x 12 months) is $66,000. Husband's current base arrearages are 35% of his annual obligation. He has offered no evidence that the increase in his support obligation per Paragraph 7 of the Consent Order from $5,500.00 per month to $6,000.00 per month is disproportionate to the size of his current arrearages. Therefore, because there is no evidence that the increase in his monthly obligation is disproportionate compared to what he currently owes, this Court must conclude that the Trial Court erred in holding that Paragraph 7 is an unenforceable penalty.

Wife's Brief at 19 (footnote and internal citations to the record omitted) (citing Palmieri v. Partridge, 853 A.2d 1076, 1081 (Pa. Super. 2004)).

Husband agrees with the trial court that Paragraph 7 of the Consent Order is an unenforceable penalty clause. Husband's Brief at 14. He maintains that the clause has no relation to damages, "it is simply a punishment." Id. at 17. He suggests that Paragraph 7 "improperly fixes, in advance, damages to Wife for any breach, without relation to a reasonable forecast of just compensation and despite the fact that the harm is capable of quick and accurate estimation." Id. at 25 (emphasis in original).

- 10 -

The Hearing Officer determined, and the trial court agreed, that Husband had the ability to pay alimony, and his nonpayment was willful. Contrary to Wife's claim, the trial court indeed found Husband in contempt of court regarding his monthly alimony obligation. Order, 12/27/16; Order, 7/10/17. The trial court did hold, however, that Husband was not in contempt due to noncompliance with Paragraph 7, and it refused to impose the $500 alimony increase per month, retroactive to 2010. Trial Court Opinion, 10/26/17, at 5. In this regard, the trial court agreed with the Hearing Officer that the alimony increase of $500 per month, retroactive to February 26, 2010, was a penalty, or liquidated-damages provision, and therefore, it was unenforceable. Order, 12/27/16; Order, 7/10/17.

We agree with the trial court's explanation, which is supported by the record, as follows:

> There is no dispute regarding Husband's failure to make his alimony payments on time. Husband fell behind the first year and remained behind through the date of the hearing. From 2010 through 2015, Husband was not far enough behind to justify Wife pursuing the matter. Wife took no action to compel alimony payments until the arrears were over $20,000. At the time of the hearing, arrears were $23,000. Husband contends that he did not have the financial ability to make the payments, and cannot be held in contempt. Husband introduced evidence of his decreasing income, outstanding tax obligations, and other debts. The Hearing Officer found that Husband had the ability to pay, and that his failure to pay was willful. In 2016, he had gross receipts of $280,000.00. This was in line with previous years. . . . That same year, he took a two-week trip to Italy, he leased a new apartment, leased a new Mercedes Coup, and made numerous trips to Florida. He belongs to a country club, and eats dinner out four nights per week. The [c]ourt agreed that Husband had the ability to make his alimony payments and

that his failure to comply with the Consent Order was willful. The Hearing Officer recommended that he purge by paying in full and on time going forward. No additional purge conditions were imposed.

Wife seeks to impose the penalty provisions of Paragraph seven which require[] Husband to pay $6000 per month retroactive to February 26, 2010 if [he] fails to make any payment on time. Wife sought additional arrears of $41,500, or $500 per month for the six years and eleven months since the [filing of the] Consent Order. The Hearing Officer found that the provision increasing the alimony payment by $500 per month back to February 26, 2010 was a penalty, or liquidated damages provision, and unenforceable. The [c]ourt agrees. A Consent Order is a contract and must be construed as such. It is not a legal determination by the [c]ourt of the matters in controversy. It is merely an agreement between the parties. Laird v. The Clearfield & Maiming Railway Company, 846 A.2d 118 (Pa. Super. 2004); Lower Frederick Twp. v Clemmer. 543 A.2d 502, 510 (Pa. 1988). For a penalty provision in a contract to be valid and enforceable, the provision must be a reasonable forecast of the possible harm to the non-breaching party. Palmieri v. Partridge, 853 A.2d 1076, 1080 (Pa. Super. 2004). Here, Husband was only in arrears a few thousand dollars between 2010 and 2015. Wife made no effort to enforce the Consent Order or seek sanctions. According to Wife, this was not enough money worth fighting over in [c]ourt. The [c]ourt finds that the provision is not a reasonable forecast of harm to Wife, but was meant to punish Husband for failing to make timely payments. As such, it is tantamount to a penalty and not enforceable.

Trial Court Opinion, 10/26/17, at 4–5.

In reaching this conclusion, we reject Wife's contention that the trial court's construction of the Consent Order "as if it were a contract" resulted from "flawed" reasoning. Wife's Brief at 11–12. In VanKirk v. Vankirk, 485 A.2d 1194 (Pa. Super. 1984), the parties agreed to the husband's payment of alimony, and the agreement was encompassed in a consent order. Id. at 504. When the husband ceased making payments and the

wife sought enforcement, this Court noted that the agreement for the payment of alimony, which was not the result of an alimony award but rather, was the result of the parties' agreement, was to be enforced "in accordance with the same rules of law applying to determining the validity of contracts generally." Id. at 505.

We similarly reject Wife's contention that Palmieri, 853 A.2d at 1081, compels the conclusion that the trial court "erred in holding that Paragraph 7 is an unenforceable penalty." Wife's Brief at 19. First, in Palmieri, the damages at issue resulted from a home-buyer's breach of a sales agreement and were comprised of the cost due to the sellers for the time the property was not on the market and the lesser sales price they later had to accept. Here, Wife seeks "damages" of an extra $40,000 that Husband did not "cause." According to the Consent Order, any failure to pay by Husband is not tied to compensation for Wife, but to a punishment.

Second, as the trial court held, for a penalty provision in a contract to be enforceable, the provision must be a "reasonable forecast of the possible harm to the non-breaching party." Trial Court Opinion, 10/26/17, at 5. Paragraph 7 fixes, in advance, damages to Wife for any breach, without relation to a reasonable forecast of the possible harm to Wife. The record reflects that at the end of 2013, Husband was in arrears $2,130; at the end of 2014, arrearages totaled $6,890. N.T., 11/30/16, at 85–86. Wife allegedly made no effort to enforce the Consent Order or seek sanctions

because she allegedly concluded it was not enough money worth fighting over in [c]ourt. Id. at 85. We agree that the provision is not a reasonable forecast of harm to Wife, but was meant to punish Husband for failing to make timely payments. As such, it is tantamount to a penalty and not enforceable.

As our Supreme Court has explained:

Liquidated damages is a term of art originally derived from contract law; it denotes the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable…if the breach occurs. A penalty, by contrast, is fixed, not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach. Thus, contracting parties may provide for pre-determined liquidated damages in the event one party fails to perform, particularly in circumstances where actual damages would be difficult to estimate in advance or to prove after a breach occurs. See…Restatement (Second) of Contracts, § 356(1) ("Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss; a term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.").

. . . [W]e have indicated that liquidated damages in actions in contractu may be awarded only in cases where the amount is reasonable and there is a difficulty in assessing the harm that would be caused by a breach. This position reflects the public policy of this Commonwealth favoring reasonableness in contractual stipulations generally. See…Kunkle v. Wherry, 189 Pa. 198, 201, 42 A. 112 (1899) (observing that one basis for the unenforceability of contractual penalties is that a party should not be allowed to profit from the other's default).

Pantuso Motors, Inc. v. Corestates Bank, N.A., 798 A.2d 1277, 1282–1283 (2002) (citations omitted) (emphasis added).

In Geisinger Clinic v. Di Cuccio, 606 A.2d 509 (Pa. Super. 1992), this Court affirmed the trial court's decision to uphold a liquidated damages clause in the face of Mr. Di Cuccio's challenge that it constituted an invalid, unenforceable penalty clause. Di Cuccio had entered a contract containing the clause in question when he sold his business to Geisinger and went to work for that entity. Therein, we observed, "Early in the history of our [C]ourt, we delineated the four criteria to differentiate a liquidated damages provision from a penalty or forfeiture term . . . ." Id. at 516. Those four benchmarks include:

1. "When, independently of the stipulation, the damages would be wholly uncertain and incapable or very difficult of being ascertained, except by mere conjecture, then the damages will usually be considered liquidated:"

2. "Where a party binds himself in a sum named not to carry on any particular trade, business or profession, within certain limits or within a specified period of time, the sum named will be regarded as liquidated damages and not as a penalty:"

3. "A sum fixed as security for the performance of a contract containing a number of stipulations of widely different importance, breaches of some of which are capable of accurate valuation, for any of which the stipulated sum is an excessive compensation, is a penalty."

4. "When the covenant is for the performance of a single act or several acts, or the abstaining from doing some particular act or acts, which are not measurable by any exact pecuniary standard, and it is agreed that the party covenanting shall pay a stipulated sum as damages for a

> violation of any of such covenants, that sum is to be deemed liquidated damages and not a penalty."

Id. at 516 (quoting Stover v. Spielman, 1 Pa. Super. 526, 530–531 (1896)).[2]

We have no hesitation in concluding, as did the Hearing Officer and the trial court, that Paragraph 7, by its express terms, is a punishment clause. The retroactive increase has no relation to a calculation of damages or any actual loss. The same penalty, retroactive payment of $500 per month, applies to "a number of stipulations of widely different importance," Geisinger, 606 A.2d at 516, i.e., failure to pay the insurance premium, failure to pay alimony, or to fall short by any amount before year's end. Indeed, Paragraph 7 is conditioned "upon [Husband's] timely compliance "with all the provisions" of the agreement. Consent Order, 3/1/10, at ¶ 7 (emphasis added).

As we stated in Holt's Cigar Co. v. 222 Liberty Associates, 591 A.2d 743 (Pa. Super. 1991):

> Nearly a century ago our [S]upreme [C]ourt quite aptly articulated the policy against the enforcement of penalties in actions ex contractu:
>
> > Where the breach of agreement admits of compensation, the recovery may be limited to the loss actually sustained, notwithstanding a stipulation for a penalty. This rule is founded upon the principle

---

[2] Because Geisinger involved a covenant-not-to-compete clause, not all of the above criteria are relevant to this case.

> that one party should not be allowed to profit by the default of the other, and that compensation and not forfeiture is the equitable rule.

Id. at 747. In Holt's Cigar, an action for damages and injunctive relief due to breach of a commercial lease, the trial court imposed an award based on an agreed-upon liquidated-damages provision that provided for a payment of $500.00 per day when the tenant was unable to conduct business due to the defendant's construction activities. The issue on appeal was whether the liquidated-damages provision was compensation or a penalty. We held that

> [t]he question [of whether stipulation is a penalty or a valid liquidated-damages provision]…is to be determined by the intention of the parties, drawn from the words of the whole contract, examined in the light of its subject-matter and its surroundings; and in this examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach in damages, and such other matters as are legally or necessarily inherent in the transaction.

Id. at 747–748. Based on testimony in the record, we concluded that the fixed sum bore no reasonable relation to anticipated or probable damages but was a penalty to discourage delay. Since the award did not represent compensation for damages sustained, we reversed and vacated it. Id. at 749. Thus, for all of the above reasons, we agree with the trial court that Paragraph 7 of the Consent Order is a punishment and therefore, it properly concluded the provision is not enforceable.

Wife's next issue relates to Husband's failure to maintain a life insurance policy in the amount of $200,000.00 naming Wife as beneficiary,

as allegedly required by a 2003 court order and as described in Paragraph 4 of the Consent Order. Wife explains in her brief:

> The MetLife Insurance policy in question had been in effect since the 1990s and the premiums were always the same amount ($810.00) and always due in January and June each year. (Tr. at 21-23, R.R. at 85a -87a. Husband failed to pay the premiums on this policy and, as a result, the policy lapsed in 2013. Tr. at 30, R.R. at 94a. See also Jan. 26, 2016 Letter from [Wife's counsel] to [Husband], Exh. G, R.R. at 231a ("I met with Wife on Friday because she informed me that you have allowed your Met Life Insurance policy to lapse…according to Wife, it lapsed in October of 2013").

Wife's Brief at 20.

Husband testified that he is not insurable due to his health, N.T., 11/30/16, at 79, but Wife maintains that fact was not established in the record. Wife's Brief at 23 (citing N.T., 11/30/16, at 79–81). Wife avers that Husband's testimony was merely self-serving, and the trial court's reliance on it was error. Wife's Brief at 24.[3]

> This issue involves Paragraph 4 of the Consent Order, which provides:

> 4. [Husband] shall continue to pay all premiums necessary to maintain [Wife] as beneficiary on life insurance in an amount of $200,000.00 as required by prior Court Order of 2003 until such time as be fully retires. [Husband] shall transfer ownership of this policy to [Wife] within 15 days of the date of this Order. In entering into this Order, [Husband] authorizes [Wife] to contact the insurance agent and/or company in order to determine if the requisite insurance is in effect. Once the policy is transferred to [Wife], copies of all statements and premium notices shall be mailed to [Wife] and bills for premiums mailed to [Husband].

---

[3] Wife's cited support for her claim is a case that has been withdrawn and is awaiting reargument before the Court en banc.

Consent Order, 3/1/10, at 2.

Wife asserts that her mailing of the bills to Husband was not a condition precedent to Husband's payment of the premiums. Wife's Brief at 21. She suggests Husband could have requested the premium notices to be mailed to him directly, but he failed to do so. Id. Indeed, Paragraph 4 states such bills are to be mailed to Husband, but it is unclear whether it was Wife's responsibility or an arrangement Husband was to make with the insurance company. Wife maintains that even if Husband is not insurable, a fact she contends is not proven in the record, his obligation pursuant to the Consent Order is not extinguished. Wife's Brief at 24.

Husband agrees with the trial court that Wife was required to send the bills, and then Husband was to make payment. Husband's Brief at 29. Thus, he asserts Wife's action was a condition precedent to his performance. Id. at 30–31. Husband points out that the insurance policy lapsed in 2013, but Wife did not address the issue until 2016. Id. at 31. Husband further avers that the trial court had no basis to overturn the Hearing Officer's credibility determination on this issue. Id. at 33. In this regard, the trial court stated:

> Husband transferred ownership of the policy to Wife and paid the premiums for all bills she mailed to him. From time to time, Wife failed to send Husband the bills and he did not pay them. Each time, Husband paid the bills late and the insurance company accepted the late payments. Husband complained to Wife that she needed to send him the bills when she received them. Husband testified that he did not independently keep

- 19 -

track of when the premiums were due. He relied on Wife to send him the bills. Her obligation was to send him the bills, and his obligation was to pay those bills. Wife again failed to send Husband bills and the policy lapsed for non-payment of premium in October of 2013. Husband sent in the late payment and sought to have the policy reinstated. The insurance company returned his late premium and refused to reinstate the policy. The insurance company claimed that Husband was no longer insurable based on his age and health.

Wife contends that her failure to send him the bills was immaterial as Husband was well aware what the premium was, and when it was due. Wife admits that Husband is no longer able to obtain the previous coverage at his current age and health. Wife asks that he be required to pay $5000 per month into an escrow account to be held for Wife's benefit to compensate for his failure to maintain the policy.

Trial Court Opinion, 10/26/17, at 5–6. Thus, the trial court agreed with the Hearing Officer that Husband was not in contempt for the lapse of the insurance policy.

We note that while Wife asserted in the contempt petition the same phrase included in Paragraph 4 of the Consent Order, that a 2003 order required the maintenance of life insurance, Wife has not identified such order for our review, nor have we discovered any such order in the certified record. The provision at the end of the Paragraph 4, "Once the policy is transferred to [Wife], . . . bills for premiums [shall be] mailed to [Husband]," does not clearly identify whether Wife was required to mail the invoices to Husband or whether the bills were to be mailed directly to Husband from the insurance company. However, the testimony before the Hearing Officer was that Wife owned the life insurance policy and Husband had "no access to

- 20 -

information relating to the policy . . . ." N.T., 11/30/16, at 30, 47. Husband testified on cross-examination, "I had no access to the bills and [Wife] failed to turn them over in a timely fashion. By the time I got them, we were already past the period, so a number of times I had to come up with a premium which reinstated the policy." Id. at 49.

The Hearing Officer, looking at the language of Paragraph 4, noted that it provided that bills for premiums "shall be mailed" to Husband, and she asked Husband whether bills were mailed to him, assumedly from the insurance company, and Husband responded, "Never." Id. at 53. Husband again offered unrebutted testimony that in 2013, when he last attempted to reinstate the policy, he "was told it was cancelled because [he was] no longer insurable. That's why the premium was returned." Id. at 52.

As previously noted, the trial court found, from this testimony before the Hearing Officer, that it was Wife's obligation to send Husband the bills, and it was Husband's obligation to pay the bills. Trial Court Opinion, 10/26/17, at 5–6. The trial court relied upon the Hearing Officer's credibility determination, as follows:

> The Hearing Officer found that Husband was credible, that he did not let the policy lapse intentionally. In determining issues of credibility, the Master's findings must be given the fullest consideration because it was the Master who observed and heard the testimony and demeanor of the various witnesses. Rothrock v. Rothrock, 765 A.2d 400 (Pa. Super. 2000). Based on the credibility determination of the Hearing Officer, the [c]ourt found that Husband was not in contempt of Paragraph 4 of the Consent Order.

Trial Court Opinion, 10/26/17, at 6.

> Similarly, this Court defers credibility determinations. As we stated:
>
> [I]t is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. Sternlicht v. Sternlicht, 822 A.2d 732, 742 (Pa. Super.2003), aff'd, 583 Pa. 149, 876 A.2d 904 (2005). We are also aware that "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." Moran v. Moran, 839 A.2d 1091, 1095 (Pa. Super. 2003) (citing Simeone v. Simeone, 380 Pa. Super. 37, 551 A.2d 219, 225 (1988), aff'd, 525 Pa. 392, 581 A.2d 162 (1990)).

Childress v. Bogosian, 12 A.3d 448, 455–456 (Pa. Super. 2011). Because the evidence of record supports the Hearing Officer's credibility determinations, N.T., 11/30/16, at 30–32, 48–53, as upheld by the trial court, we conclude that the trial court properly found that Husband was not in contempt of Paragraph 4 of the Consent Order. Harcar v. Harcar, 982 A.2d 1230, 1236 (Pa. Super. 2009) (This Court defers to the credibility determinations of the lower court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor).

Wife's final issue relates to Paragraph 9 of the Consent Order and assails the trial court's award to Wife of counsel fees in the amount of $3,000, the amount awarded by the Hearing Officer. Wife points out that Paragraph 9 of the Consent Order states, "If [Husband] fails to comply with any of the provisions of this Order, he will be responsible for all counsel fees

and costs [Wife] incurs in seeking to obtain his compliance." Wife's Brief at 27.

At the November 30, 2016 hearing, Wife established that from January of 2016 until November of 2016, Wife incurred $8,634.50 in legal fees relevant to her pursuit of her contempt petition. N.T., 11/30/16, at 22–24, Exhibit 4. Husband responds that the fees were unreasonable and inflated, and he maintains he should not pay any fees. Husband's Brief at 35–37, 58–59. We also consider Husband's argument in his cross-appeal on this issue, as it is relevant here. Husband argues that it was unreasonable to award Wife counsel fees when Husband was not held in contempt as to the life insurance, and was unable to comply with the alimony provision of the Consent Order. He suggests such an award merely makes it more difficult for Husband to meet his alimony obligations in the first instance. Husband's Brief at 58.

We rely on the trial court's explanation in affirming the imposition of $3,000 in attorney's fees in favor of Wife, as follows:

> Paragraph nine of the Consent Order provides that "If [Husband] fails to comply with any of the provisions of this Order, he will be responsible for all counsel fees and costs [Wife] incurs in seeking to obtain his compliance." Wife claims to have incurred in excess of $10,000 in counsel fees for the contempt proceeding, an amount which is reasonable. Husband argued that the fees requested were either not incurred as a result of the issue for which he was held in contempt, and were not reasonable for a simple, straight forward contempt hearing. The Hearing Officer awarded Wife $3000, noting that this was approximately one-third of her request. As Wife was only successful in establishing that Husband failed to comply with one

of the provisions of the [Consent] Order, the [c]ourt found no reason to overturn the recommendation of the Hearing Officer.

Trial Court Opinion, 10/26/17, at 6–7.

We find this explanation reasonable. We have determined that the trial court correctly resolved the issues before it; thus, Wife remains successful in establishing Husband's noncompliance with only one provision of the Consent Order. We have affirmed the unenforceability of Paragraph 7, supra. An award of counsel fees is within the discretion of the trial court, and we may reverse only upon a finding of abuse of that discretion. Marra v. Marra, 831 A.2d 1183, 1188 (Pa. Super. 2003). We find no abuse of discretion on this issue.

We turn to Husband's cross-appeal. Husband maintains the trial court erred in finding Husband in contempt regarding the payment of monthly alimony, and in requiring Husband to make two lump sum payments on arrearages in the amount of $20,000 each.[4] Second, as noted above, he assails the award of counsel fees to Wife. We have determined that the award of counsel fees was proper, as was the trial court's determination that Husband was in contempt of the Consent Order for nonpayment of alimony.

In a further attempt to support why he should not be held in contempt for nonpayment of alimony, Husband suggests that the court erred in

_____

[4] Husband offers no citation to case law in support of his two-paragraph claim regarding the lump-sum payments. Husband's Brief at 56–57.

crediting the fact that some months Husband can meet expenses and some months he cannot do so. Husband's Brief at 51. The whole of this argument is merely to point out Husband's allegedly dire financial situation and the reasons for the choices he makes. Id. at 52. He suggests that because he is seventy-five years old and has "alimony's Sword of Damocles hanging over his head for life, he should be able to enjoy some leisure activities, such as golf." Id. at 54. This statement supposedly explains why he belongs to a country club; it has no effect on our conclusion regarding the propriety of the trial court's decision to hold Husband in contempt for nonpayment.

Therefore, the only issue remaining in this cross-appeal is the propriety of the order requiring Husband to make two lump-sum payments of $20,000 each. At the November 30, 2016 hearing before the Hearing Officer, testimony and evidence submitted by the parties showed that the alimony arrearages have fluctuated significantly in recent years. Both Wife and Husband submitted printouts of PACSES documents detailing Husband's alimony payments and the balance of his arrearages.[5] Exhibit 3, N.T.,

_____

[5] The exhibits admitted during the November 30, 2016 hearing are not in the certified record before this Court; they appear only in the Reproduced Record. We will consider the exhibits. See WMI Grp., Inc. v. Fox, 109 A.3d 740, 744 n.5 (Pa. Super. 2015) (Where the certified record did not include necessary exhibits but the reproduced record did so, we would consider the exhibits because they were "part of the reproduced record and neither party ha[d] disputed their accuracy.") Herein, Wife's exhibits were
(Footnote Continued Next Page)

11/30/16, at 17–18; R.R. at 181a–195a; Exhibit C, N.T. 11/30/16, at 25–26, 35; R.R. at 214a–223a. At the end of 2014, Husband was $6,890 in arrears, while on May 2, 2016, Husband was $48,037.95 in arrears. Exhibit C, N.T., 11/30/16, at 25–26; R.R. 215a, 221a. During the November 30, 2016 hearing, the parties established that Husband was $23,000 in arrears as of the day of hearing. N.T., 11/30/16, at 66–67. Wife's counsel acknowledged multiple times during the hearing that Husband's arrearages totaled $23,000. Id. at 17–18, 64–69. The Hearing Officer noted Husband's November, 2016 $5,500 payment and confirmed that the arrears stood at $23,000. Id. at 17.

Notwithstanding Wife's counsel's admission that the arrearages totaled $23,000 as of the date of the hearing, Wife continued to assert that the Court should find Husband owed a significantly larger sum to include the additional amounts contemplated by Paragraph 7 of the Consent Order, for total arrearages of $64,500. N.T., 11/30/16, at 17–19.[6] The Hearing Officer rejected applicability of Paragraph 7, the trial court agreed, and we have rejected applicability of the paragraph as well, infra.

(Footnote Continued) ———————————

admitted into evidence, and the Hearing Officer heard and ruled on objections. N.T., 11/30/16, at 5–24. Similarly, Husband's exhibits were admitted into evidence after objections were ruled upon. Id. at 24–35.

[6] Counsel's reference at the hearing to a February 26, 2000 consent order is an obvious typographical error. N.T., 11/30/16, at 18.

The Hearing Officer, in rejecting enforceability of Paragraph 7 and holding Husband in contempt for nonpayment of alimony, stated in the interim order: "The further finding of the court is that [Husband] is in contempt regarding payment of the monthly support obligation and may purge by maintaining employment and paying the current obligation as directed, in full and on a monthly basis." Interim Order, 12/27/16, at 1. The trial court made the order final on July 10, 2017, with the following alteration:

> AND NOW, to wit, this 10 day of July 2017, Wife having filed exceptions to the Recommendation of the Hearing Officer dated December 27, 2016, and Husband having filed cross exceptions, it is hereby ORDERED, ADJUDGED, AND DECREED as follows.
>
> [Wife's] exceptions are granted in part. Husband, shall, in addition to paying on time and in full each month, shall pay two lump sum payments on arrearages on October 1, 2017 and on February 1, 2018 on the amount of $20,000 each. All other exceptions and cross exceptions are dismissed and with the exception of the above change, the Recommendation dated December 27, 2016 shall be entered as a final order.

Order, 7/10/17 (emphasis added).

The trial court, in its opinion, erroneously stated that "[Husband] paid a total of $2000 to Wife in all of 2016." Trial Court Opinion, 10/26/17, at 4. This statement is not supported by the record. During the November 30, 2016 hearing before the Hearing Officer, both parties submitted PACSES documents as evidence, showing each monthly charge to Husband, each alimony payment to Wife, and an updated balance after each transaction.

Exhibit C, N.T. 11/30/16, at 25–26, 35; R.R. at 214a-223a. The PACSES documents demonstrate Husband made payments in every month of 2016 except October. Id.

Similarly, Husband submitted Exhibit D, a summary of his gross receipts from January 2005 to November of 2016 and the amount of alimony he paid each of those months to Wife. Exhibit D, N.T. 11/30/16, at 26-28, 35; R.R. at 224a. While introducing Exhibit D into evidence, Husband's counsel represented that the exhibit showed Husband paid $9,000 toward alimony in November 2016, and Wife's counsel interjected that Wife actually received $12,000 that month. N.T., 11/30/16, at 27–28. Thus, Husband had made an additional $3,000 payment between the creation of Exhibit D and the hearing. Exhibit D reveals that Husband paid Wife $63,016.23 in alimony in 2016 as of the November 30, 2016 hearing, not including the additional $3,000 Wife's counsel stated on the record that Husband had paid in November. Exhibit D, N.T., 11/30/16, at 26-28; R.R. at 224a. Therefore, the record demonstrates that as of November 30, 2016, Husband paid over $66,000 in alimony to Wife. This is consistent with the amount Husband asserted he paid in 2016 in his brief, and contradicts the trial court's statement that Husband had only paid $2,000 in alimony that year.

Moreover, despite Husband's inclusion of an exception challenging the payment of two lump-sum payments of $20,000 each, the trial court failed to address the propriety of the payment. The trial court acknowledged in its

opinion that arrearages stood at $23,000 at the time of the hearing. Trial Court Opinion, 10/26/17, at 4. Thus, the trial court has wholly failed to explain the order of payment of "two lump sum payments on arrearages" in "the amount of $20,000 each," when arrearages were nearly one-half that amount. We note that the final order appealed required Husband to pay "on time and in full each month." Order, 7/10/17; see also Interim Order, 12/27/16 ("The further finding of the court is that [Husband] is in contempt regarding payment of the monthly support obligation and may purge by maintaining employment and paying the current obligation as directed.").

The trial court did not provide any analysis of the arrearages nor any explanation of how it arrived at its conclusion in the July 10, 2017 order. The record does not support any basis for such an order. Thus, we are compelled to conclude that the trial court abused its discretion in ordering two $20,000 payments on arrears. See Bold, 939 A.2d at 894–895 ("Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it . . . exercises its discretion in a manner lacking reason."). Therefore, we will reverse that portion of the order and remand to the trial court for imposition of a payment on arrearages that is supported in the record.

Order reversed regarding payments on arrearages; order affirmed in all other respects. Case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

P.J.E. Bender joins the Memorandum.

Judge Strassburger files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/2018